## PITTSFIELD BANK *v.* CLOUGH.

A trustee in foreign attachment, who acquired land from the defendant in fraud of the defendant's creditors, and afterward sold the land, is chargeable only for the profits of the transaction.

FOREIGN ATTACHMENT. The principal defendants, Thomas Clough and others, made no defense, and the trial was to determine the liability of the trustees, David M. Clough and others.

The plaintiffs claimed that the trustees were chargeable, among other things, for the proceeds of the sales of certain real estate made by them, formerly the property of the defendant, Thomas Clough, and which had come into their hands by virtue of certain mortgages and levies, alleged to have been fraudulent and void as to the creditors of the defendant, because made to cover up the property, in order to hinder, delay, and defraud the creditors.

On trial, it appeared that the trustees acquired their title to a portion of the real estate for whose proceeds they were sought to be made chargeable, by the foreclosure of certain mortgages, taken by them from the defendant, by taking and retaining possession thereof for one year, and giving notice of such possession taken in a newspaper, agreeably to the provisions of the statute; and to another portion by the levy of sundry executions against the defendant thereon, which executions had issued in suits originally commenced by creditors of the defendant, whose interest therein said trustees had purchased before judgment. The plaintiffs claimed that these mortgages were taken by the trustees, and the interest of the creditors in the suits wherein said executions issued, purchased,

and said executions subsequently levied by said trustees, for the purpose of covering up this real estate of the defendant from his creditors, in order to hinder, delay, and defraud them. The plaintiffs admitted that the claims, purchased by the trustees, as before stated, while in suit, were just and valid debts of the defendant to the original creditors; and it appeared that one of the debts, secured by one of the mortgages from the defendant to the trustees, was a valid promissory note, originally given by the defendant to a creditor for money borrowed, and fully secured by a collateral note and mortgage of double its amount, and by him transferred, with the collateral note and mortgage, for a full consideration, to the trustees, prior to the execution of the mortgage to them to secure its payment.

There were various mortgages of said real estate from the defendant to other parties, made subject to the rights finally acquired by the trustees under the mortgages to them and the levies upon said executions. The trustees had received some $17,000 for real estate sold by them.

The trustees requested the court to instruct the jury that, even if the mortgages and levies, whereby the trustees had acquired title to the real estate for whose proceeds they were sought to be charged, were fraudulent, as having been made for the purpose of covering up the property of the defendant, in order to hinder, delay, and defraud his creditors, inasmuch as the mortgages had been duly foreclosed and the levies completed in conformity to the provisions of the statute, the trustees could not be charged for the proceeds of the sales of the real estate thus fraudulently mortgaged to and levied upon by them; or, if chargeable at all, it could only be for the balance, if any, of such proceeds remaining in their hands, after deducting therefrom all sums advanced to and for the defendant, as the consideration of the debts secured by said mortgages, and to purchase the claims upon which the executions thus levied issued, with interest, and full compensation for all their services, expenses, and trouble in the premises.

The court declined thus to instruct the jury, but did instruct them that, if they found the trustees had in their hands the proceeds of sales by them of real estate formerly belonging to the defendant, the title to which they had acquired only by mortgages taken by them for the purpose of covering up his property, in order to hinder, delay, and defraud his creditors, or by levies made by them for the same purpose, such mortgages and levies being void as against his creditors, they were chargeable for such proceeds as trustees, without regard to or deduction of the sums by them advanced, as the consideration of the debts secured by such fraudulent mortgages, or to purchase the claims upon which the executions thus fraudulently levied had issued.

The jury having, by their verdict, found the trustees chargeable, the trustees moved that the same be set aside and a new trial granted, for supposed errors in refusing to give to the jury the instructions requested, and in giving those that were given. And the questions arising were reserved.

180                     BANK *v.* CLOUGH.                [Merrimack,

*Minot & Mugridge*, for the trustees.

I. The instructions relative to the liability of the trustees for the proceeds of the real estate, without any regard to or deduction on account of the claims held by them against the principal defendant, were erroneous.

The case finds that the claims embraced in the suits, and also one of the notes secured by the mortgages, were just and valid debts of the defendant, created previously to the transactions by the trustees. The subsequent mortgages and levies, however fraudulent, would not vitiate those debts. The securities might be avoided, but the claims would stand unimpaired, in their original validity. *Ladd* v. *Wiggin*, 35 N. H. 421.

The question in this case is not whether, in case of an attachment of the real estate itself, the trustees could have held any right in it on account of the debts due to them. It may be admitted that, in such a case, the conveyances being voidable by creditors, the attachments would hold. But the present form of proceeding is altogether different. It seeks not to avoid the conveyances, but to hold the proceeds of the sales made under them. Under such circumstances, only what would be justly due to the defendant himself can be held. In case of an attachment, the strict principles of law would apply, but the trustee process is an equitable proceeding. And the following authorities are directly in point in favor of the right of the trustees in this case to an allowance on account of their claims against the defendant. Cush. on Tr. Pr. 83, sec. 202; *Andrews* v. *Ludlow*, 5 Pick. 32; *Ripley* v. *Severance*, 6 Pick. 474; *Steadman* v. *Vickery*, 42 Me. 138; *Beach* v. *Viles*, 2 Pet. 678.

In connection with the above, we refer to other authorities bearing upon the same point. *Thomas* v. *Goodwin*, 12 Mass. 140; *Hutchins* v. *Sprague*, 4 N. H. 469. And if the trustee may thus discharge himself by the application of the proceeds to payment of debts of the defendant to others, we do not see why he may not equally do so by application of them to the satisfaction of just and valid dues to himself.

There is an important distinction between this case and those in which the property itself is in the hands of the trustee. In those cases, the trustee must rely entirely upon the conveyance of the property to him; and he has no right to retain it for any demands except those secured by a direct lien upon it. A trustee is liable for property in his hands, without regard to his own claims, however just, against the owner of it, unless he has a legal lien on it. *Allen* v. *Megguire*, 15 Mass. 490. And a legal lien for one debt will not authorize him to retain it for another. *Jarvis* v. *Rogers*, 15 Mass. 389. A fraudulent conveyance creates no lien; hence a trustee can not retain the property under it for his claims. *Burlingame* v. *Bell*, 16 Mass. 324. In the present case, however, the plaintiffs do not claim to charge the trustees for any specific property in their hands. In fact, the nature of the property conveyed to them, real estate, of itself would preclude from charging the trustees for it, were it in their possession. *Wright* v. *Bosworth*, 7 N. H. 590. But the plaintiffs claim to charge the trustees on account of an indebtedness

implied by law, under the circumstances, for the proceeds received by them for the real estate. If the claim were for the property itself in the hands of the trustees, they would have no right to retain it for dues to themselves, unless by virtue of some legal lien on it; and the conveyances to them, if fraudulent, would give them no such lien. But the claim being to charge the trustees on account of an indebtedness or a liability in the form of an indebtedness, the right of set-off fully applies. This distinction is recognized in *Boardman* v. *Cushing*, 12 N. H. 105; in which case it was held that the property having been sold, the trustees could hold the proceeds for a debt for which they had no lien on the property itself. So, also, in *Emerson* v. *Wallace*, 20 N. H. 567, in which the trustee held the proceeds. See, also, *Brewer* v. *Pitkins*, 11 Pick. 301; *Allen* v. *Hall*, 5 Met. 263.

In cases of fraudulent assignments, creditors have two courses of action open for them to pursue—one to attach the property, the other, to trustee the assignee. If they adopt the latter, they take it as an equitable action, subject to all the consequences. See opinion of the court in *Lamb* v. *Stone*, 11 Pick. 532, in which these different methods of procedure, with their different principles, are considered and recognized, confirming the decision in *Andrews* v. *Ludlow*, and the other authorities above cited, in favor of the trustees in this case.

The cases of *Hutchins* v. *Sprague*, 4 N. H. 469; *Boardman* v. *Cushing*, 12 N. H. 105; and *Bailey* v. *Ross*, 20 N. H. 302, do not conflict with the views here expressed, nor with the authorities above cited, in favor of the trustees. For, on examination, those cases and the authorities cited in them, will be found to refer entirely to specific property in the hands of the trustees, on which, as before stated, the fraudulent conveyances gave them no lien. They do not apply to cases like this, where the trustees are sought to be charged, not for property in their hands, but on account of an implied liability for moneys received by them. And a distinction is also to be made between cases where the claims of the trustees arise out of, and were a part of, the fraudulent transactions themselves, and those cases, like this, where the claims were created and had a just and valid existence before the fraudulent transactions.

II. The ruling and instructions of the court relative to the liability of the trustees for the proceeds of the real estate, under the circumstances stated, were also erroneous.

The suits were properly commenced by the creditors, and attachments of the real estate made, for the lawful purpose of securing just and valid claims. The subsequent levies on the executions in those suits were the acts of officers of the law on judicial process. If properly conducted, there could be no fraud toward creditors; and if improperly, the remedy is by proceedings to set them aside.

Again, there were various mortgages of the real estate to other parties, made subsequent to the mortgages and attachments under which the trustees finally acquired their titles. If the foreclosures and levies on the property were void as to these plaintiffs, they were equally so as to the creditors holding those mortgages; and

their rights were prior to those of these plaintiffs, because their mortgages were before the commencement of this suit. But by the ruling and instructions of the court, the trustees were made liable to these plaintiffs for the proceeds of the real estate, without any regard to the prior rights and interests therein of those mortgagees—or, in other words, were held chargeable to the plaintiffs for the value of the real estate, as if acquired by free and absolute titles, when in fact the titles were still open and subject to the rights of those mortgagees.

*Perley*, on the same side.

I. The trustees are not liable for the money received on sale of land conveyed to them fraudulently by the debtor, beyond the balance after setting off the amount which they paid for the land.

1. The trustee process is an equitable proceeding, and the same principles will govern here as in a creditor's bill, or other proceeding in equity which should seek to trace the funds of a debtor, and enforce their application to the payment of his debts. *Haven* v. *Wentworth*, 2 N. H. 93. Where the creditor comes upon the property itself, the fraudulent conveyance being by the statute and the strict rule of law inoperative as to him, he must hold all without regard to advances or payments. He avoids the conveyance, and, as to him, the title remains precisely as if no conveyance had been made. But when the injured party seeks redress for a fraud on equitable principles, equity gives him what he has lost by the fraud, is satisfied with making him whole, and does not undertake to punish the fraudulent party by the forfeiture of what he has paid in the transaction. Equity places the parties *in statu quo*. *A. G.* v. *Vigor*, 8 Vesey 283; *Boyd* v. *Dunlap*, 1 Johns. Ch. 482; *Lord Abington* v. *Butler*, 1 Vesey, Jun., 206; *Hawes* v. *Wyatt*, 3 Brown Ch. 156; *Townsend* v. *Lowfield*, 1 Vesey 35; *Ladd* v. *Wiggin*, 35 N. H. 428, 429; *Barnawell* v. *Threadgill*, 3 Jones Eq. (N. C.) 50; 19 U. S. Dig. 233, sec. 115.

If a party would set aside a contract or conveyance on the ground of fraud, by the general rule in equity, he must first restore what he has received. And this is the measure of relief in equity, when a creditor comes and asks that the proceeds of land or other property fraudulently sold by the debtor to the defendant, may be traced and applied to his debt. *Wakeman* v. *Grover*, 4 Paige 23; *Ames* v. *Blunt*, 5 Paige 13; *Cummings* v. *McCullough*, 5 Ala. 324; 1 Eq. Dig. 556; 429; *How* v. *Camp*, Walker (Miss.) 427; 1 Eq. Dig. 557, 469.

Proceedings in equity are sometimes instituted to remove the obstruction of a fraudulent conveyance, in order that the creditor may be let in to assert his legal right to the land or other thing fraudulently conveyed. In such case, equity does not determine the measure of redress on equitable principles, but the creditor comes upon the property itself, and enforces the legal penalty upon the strict rule of a legal covin, which makes the conveyance void at his election. If these plaintiffs had levied on the land as land of the defendant, and brought their bill to set aside the fraudulent conveyance, their remedy against the land itself would not have been on equitable principles; they would have invoked the aid of equitable

proceedings merely in order that they might assert their strict legal title under the levy. Here they do not come on the land itself, and assert their right to avoid the conveyance; but they ask an account of the money received from the land, and in that case equity will make them whole, but will not punish the trustees by a forfeiture of all they have paid in discharge of the defendant's honest debts.

2. The position of the plaintiffs has no more foundation in the strict and technical rules of law than in the principles of equity. The claim here is not for the land, but for the money received as the price. Suppose, in the first place, that the conveyance is void absolutely, and wholly inoperative, then it leaves the land in the defendant just as if no conveyance had been made. The creditors have taken it, or may take it, as his. And the creditors have nothing in their hands derived from the property of the defendant under the conveyance. The case stands exactly as if they had attempted to sell without any deed or other authority from the defendant; and in that case, it follows legally and logically that they have nothing in their hands as the proceeds of his property, for nothing of his ever passed to them, or from them, under the void and inoperative conveyance.

Take the other view of the question, which I suppose to be the true one, that the fraudulent conveyance is not void, but voidable at the election of the creditor (*Byrod's Appeal*, 31 Penn. 241; 19 Dig. 333, n. 59; *Jones* v. *Bryant*, 13 N. H. 57), then these plaintiffs, by claiming the money received on the sale by the trustees, have not elected to treat the conveyance to them as void, but, on the other hand, so far as they are concerned, have ratified and confirmed it. In claiming the proceeds, they go necessarily on the ground that the land passed by the sale of the trustees, and estop themselves to deny the authority of the trustees to sell; and their authority to sell is under the conveyance of the defendant. How, then, can they say that the conveyance was void? If they ratify the sale, they ratify the whole transaction; the conveyance to the trustees must stand as security for the sums they have paid, and all the plaintiffs can claim in any proceeding calling for an account of the money in the trustees' hands, will be the balance, after deducting the advances made by them, and a reasonable allowance for their expenses and services. Story on Agency, sec. 250.

When the creditor elects to treat a fraudulent conveyance of land as void, his remedy, under our statutes, is to go directly on the land, and take it by a levy of his execution, and pay and discharge his debt by the levy; and this is the first attempt in any other way to avoid the conveyance, and deprive the purchaser of his right to set off claims fairly due to him for payments and advances. If the creditor is unwilling to take the responsibility of this course, and seeks redress in a collateral proceeding, which leaves the title to the land untouched, all he can have is an adjustment of accounts on equitable principles. Until the fraudulent title is vacated in some suit brought directly for that purpose, the creditor can not treat the land remaining in the hands of the fraudulent purchaser without any levy for his debt, as the land of his debtor, and claim the crops

for the payment of his debt. *Jones* v. *Bryant*, 13 N. H. 57. This case of *Jones* v. *Bryant* would seem to decide the rule that, to avoid a fraudulent sale, the creditor's only course is to take the land itself; he can not claim the proceeds of the land as belonging to his debtor, and show the conveyance to be void to establish his right; and the head note of the case states the general doctrine that the title passes to the grantee until some creditor defeats it by the levy of an execution. And we submit that there is no way for the creditor to make his election to treat the conveyance as void, but to take the land in some legal proceeding, and apply it in satisfaction of his debt according to the statute.

3. The authorities directly applicable to the trustee process are decisive against the claim of the plaintiff to charge the trustees with money in their hands received on the sale of land, without regard to the sums they have paid. We make no question that a trustee may be charged for money in his hands derived from a sale of the debtor's land; if he holds the money in trust for the debtor, it is no answer to say that it is the proceeds of the debtor's land, though the land itself could not be reached by this process. Nor does our case call on us to deny that where the trustee has in his hands articles of personal property belonging to the debtor, he may be charged for them, though he have independent claims against the defendant to an amount greater than the value of those articles. In such case, the right to hold the specific property does not depend on any question of fraud. The creditor attaches the specific thing by this process; the trustee delivers it over *in specie*, to be levied on and sold in the same way as if the original attachment had been by a manual taking of the sheriff; and the cases go to show that, in the absence of some lien, the trustee can not set off his claims. ·

Where the personal property of the debtor has been fraudulently conveyed to the trustee, and remains in his hands, the creditor, by an attachment in this process, goes for the property itself, and asserts his right to treat the fraudulent conveyance as void, and the property conveyed as still belonging to the debtor. And this distinction between a claim made directly on the property itself, which avoids the sale, and a claim to trace the proceeds, which recognizes and ratifies the sale, is observed in this process, as it is in equity. Where the creditor seeks to charge the fraudulent purchaser for the proceeds of the land or other thing sold, in this process as in other proceedings, he necessarily affirms the sale, and all he can claim is the surplus beyond what the trustee has paid out. No case, dictum, or critical speculation has been cited which gives any countenance to the doctrine that he can have more.

In *Hutchins* v. *Sprague*, 4 N. H. 469, the attempt was to charge the trustee for specific personal property in his hands. No one of the positions taken in that case by the plaintiff's counsel, nor any authority cited by him, went to show that the proceeds of the property could be held regardless of the trustee's claims in set-off. The ground taken was, that the process covered the identical property; that the trustee had no lien, and that this claim on the identical property avoided the fraudulent conveyance as much as if it had

been attached by the sheriff. The claim in the case of *Boardman* v. *Cushing*, 12 N. H. 105, was also for the specific property; and the remarks of the chief justice relate to the case where the "goods had been deposited or pledged." The judgment of the same learned judge in *Jones* v. *Bryant*, shows that his remarks in *Boardman* v. *Cushing* could not have been intended to apply where no direct claim was made on the land or goods, but an account was sought of the proceeds.

It is to be remarked that a judgment in this suit decides nothing as to the title to the land; it may still be claimed by these or any other creditors of the defendant; and, if the sale were fraudulent, will be held, certainly unless the purchasers from the trustees should be able to place themselves in the situation of purchasers without notice.

The case of *Thomas* v. *Goodwin*, 12 Mass. 140, is strongly in point. There the debtor conveyed goods to the trustee, and the trustee "manifestly took the property with a view to delay and defraud some of the creditors"; yet the trustee was discharged. *Cushing on the Trustee Process* 83 ; *Ripley* v. *Severance*, 6 Pick. 477 ; *Richards* v. *Allen*, 8 Pick. 408. The doctrine of the cases on this subject was recognized and applied in *Bailey* v. *Ross*, 2 N. H. 302, and is clearly stated in *Andrews* v. *Ludlow*, 5 Pick. 32.

II. It ought not to have been left to the jury to find that the levies were made to defraud creditors. The demands and the attachments were valid in the hands of the assignees, and they could no more commit a fraud against creditors in making the levy than the original plaintiffs. It would not be the case of a fraudulent conveyance to defeat a creditor; and there could be no general fraudulent intent in making the levy that would avoid the estate. The fraud, if any, must be alleged in some particular act or fact, as in the corrupt appointment of an appraiser. No authority is cited for the ruling, and no general principle will sustain it. The title to the land, under the proceedings which constitute the levy, can not be tried in a collateral proceeding like this. If an oppressive and unfair use were attempted to be made of the execution in the levy, equity would restrain; but the levy must be valid, if correct in form, until declared void and vacated in some proceeding brought directly for that purpose. *Pope* v. *Wilson*, 7 Ala. 690; 1 Eq. Dig. 516, 430.

*George, Foster & Sanborn*, for the plaintiff.

1. That a trustee may be held chargeable for the proceeds of the sale, by him, of real estate, we suppose to be well settled. See *Wright* v. *Bosworth*, 7 N. H. 590 ; *Bissell* v. *Strong*, 9 Pick. 562, 144 ; 11 Pick. 101 ; *Russell* v. *Lewis*, 15 Mass. 127, 490, and cases cited. If the conveyance be fraudulent and void as to creditors, and the land remains in the hands of the grantee, the creditor's remedy must be against the land ; but if the land has been sold, the fraudulent grantee will be held chargeable as trustee. *Wright* v. *Bosworth ; Dickinson* v. *Strong*, 4 Pick. 157 ; *Richards* v. *Allen*, 8 Pick. 405.

2. The instructions of the court, refusing the deduction in favor of the trustees, of the consideration paid for the fraudulent conveyances, were correct. Suppose the land had remained in the hands

of the trustees—upon its attachment by creditors, the trustees would have lost both the land and the consideration fraudulently paid by them for it.   Can the trustees stand any better by reason of the fact that they have converted the land into money?   The entire transaction, with its various considerations, and the various securities obtained, is tainted with fraud, and though the compound may have originally contained some harmless ingredients, neither a court of law or equity will lend its aid in separating the innocent particles from the corrupted mass, " for the mixture of good and ill together makes the whole bad, and the truth is obscured by the falsehood, and the virtue drowned in the vice."   As to creditors, therefore, the whole transaction being fraudulent, is void, and the land unsold remains liable to attachment; and if sold, the proceeds of the sale belong to the creditors, their rights being neither controlled nor in any way affected by the fraudulent transactions between the debtor and trustees.   The case of *Ladd* v. *Wiggin* is directly in point, " that the purchaser can take nothing by his fraudulent contract."

As remarked in the defendant's brief, the trustee process is an equitable proceeding, and the trustee may undoubtedly, in ordinary cases, set off all *bonâ fide* claims against the defendant not growing out of the fraudulent transaction.   The rule of law is thus stated in the head note to *Boardman* v. *Cushing*, 12 N. H. 105: "A trustee, where there is no fraud, has a right to set off or retain for all demands due him from the principal, contracted before service of the process, and payable at the time of the judgment."   Upon this point see, also, cases cited by counsel for the plaintiff in *Hutchins* v. *Sprague*, 4 N. H. 469; *Allen* v. *Megguire*, 15 Mass. 490.   The ruling claimed by the trustees would operate as a direct bounty on fraud, by insuring the purchaser against any contingency of loss growing out of the fraud.

The charge of the court was expressly confined to the claims of the trustees arising out of the fraudulent transaction and the distinction referred to in the defendant's brief, between claims thus arising and those having a just and valid prior existence, only serves to render the correctness of the ruling the more conspicuous.

3. It is difficult to perceive why the same principle of law which avoids fraudulent mortgages, and vitiates all fraudulent contracts and proceedings, should not apply to fraudulent and collusive levies. After the land levied upon has been sold (as in this case to innocent purchasers), all remedy is gone, according to the principle claimed by the counsel for the trustees, and the trustees may enjoy for ever, without molestation, the fruits of their fraud.   We suppose the simple and uniform rule to be, that if the property of the principal defendant has in any fraudulent way come into the hands of the trustee, he is liable therefor to the creditors of the former, without regard to the particular manner or means by which the fraud was effected and the property obtained.

In *Fermor's Case*, 3 Co. 78, it is said, " The common law doth so abhor fraud and covin that all acts, as well judicial as others, and which of themselves are just and lawful, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful."

Doe, J.  If the plaintiff sought to hold the land fraudulently conveyed by the defendant to the trustees, the trustees would have no right of lien or set-off for advancements or expenses, because, when the plaintiff had avoided the fraudulent conveyances, by the levy of an execution, all right and title of the trustees would be lost, and the conveyances would be wholly and absolutely void. The trustees would have no more claim upon the land, as against the plaintiff, than they would have if the land had not been conveyed to them.  In that case, the plaintiff would proceed upon the ground that so far as their rights were concerned, the title of the lands never passed to the trustees.

But in this proceeding the plaintiff admits that the title passed to them, and claims the proceeds of the land sold by them.  These proceeds can not be claimed upon the ground that they were fraudulently transferred by the defendant to the trustees.  But the plaintiff may hold, by this equitable process, the money realized by the trustees from the fraudulent transaction, which in equity should go to the defendant's creditors.  If the trustees made any advancements to the defendant, which were attempted to be secured by the voidable mortgages, those advancements are comprised and included in the proceeds received by the trustees from the sale of the land, and that part of the proceeds which represents those advancements does not equitably belong to the defendant or his creditors.  Nothing but the general balance of profits accruing to the trustees can be said to be equitably applicable to the payment of the defendant's debts.  The trustees should gain nothing, and lose nothing.  The instructions upon this point were erroneous.

Whether the trustees are accountable for the proceeds of the land, the title of which they acquired by the levy of executions issued in suits commenced by creditors whose claims were valid, and whose interest the trustees had purchased before judgment, depends upon the question whether the trustees acted in that matter as agents of the defendant, or for his benefit, or held the proceeds in trust for him.  The land was not levied upon to satisfy claims originally fraudulent, as was the case in *Esty* v. *Long*, 41 N. H. 103, but the claims being valid when held by other parties, continued valid in the hands of the trustees, unless there was some agency, trust, or special fraud in which the defendant participated.  If by any agreement or understanding between the defendant and the trustees, the trustees were to hold the proceeds of the land, or any part thereof, for the benefit of the defendant, they might be chargeable.  The instruction given to the jury that, if the trustees made the levies for the purpose of covering up the defendant's property in order to hinder, delay, and defraud creditors, the levies were void as against creditors, might imply that the purpose must be to cover up the defendant's property for his use or benefit.  But it is not necessary to consider whether the charge should have been more full and explicit on this point, or whether the trustees should have requested more particular instructions.

*Verdict set aside.*